THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES A. LINDNER, Defendant-Appellee.

(No. 73-307;

Second District—January 22, 1975.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Joel Murray, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an appeal by the State from an order of the circuit court of Du Page county quashing a search warrant and suppressing evidence seized pursuant to the warrant.

The State's appeal raises essentially the same question as was raised and answered in *United States v. Harris* (1971), 403 U.S. 573, 586, 29 L.Ed.2d 723, 735, 91 S.Ct. 2075, *i.e.*:

> "[H]ow [the] decisions in Aguilar v. Texas (1964), 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509, and Spinelli v. United States (1969), 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584, apply where magistrates in issuing search warrants are faced with the task of assessing the probable credibility of * * * informants who purport to describe criminal activity of which they have personal knowledge, and where it does not appear that such informants have previously supplied accurate information to law enforcement officers."

On October 1, 1972, Sergeant Kenneth Felbinger of the Hinsdale Police Department subscribed and swore to a complaint for a search warrant which stated:

> "On October 1, 1972 at or about 12:35 P.M., I, Sgt. Kenneth Felbinger, had a conversation with Pierre Bertolin, a resident of LaHabar, California, which took place in the Kenosha County Jail in Kenosha, Wisconsin, and which was tape recorded with Mr. Bertolino's consent, wherein Mr. Bertolino related that on the

29th of September, 1972 at or about 5:00 or 6:00 P.M. he, Mr. Bertolino, was present when a Mr. James Lindner, 6048 S. Clarendon Hills Rd., Clarendon Hills, Illinois, received approximately 28,000 capsules of a barbituate commonly referred to as 'seconal', (without being authorized to do so under the Controlled Substances Act of the Ill. Revised Statutes), from a third person, whose identity is unknown to us at this time, the place of the transaction being Mr. James Lindner's parents home, 410 W. Maple, Hinsdale, Illinois. Mr. Bertolino further related to me at this time that approximately one hour after the aforementioned transaction occurred, Mr. Bertolino went to Mr. Lindner's home at 6048 S. Clarendon Hills, Clarendon Hills, Illinois, wherein Mr. Bertolino observed the same capsules in an attache case in Mr. Lindner's bedroom, and to the best of his personal knowledge remains in Mr. Lindner's house at the Clarendon Hills address."

Subsequently, on October 1, 1972, a search warrant was issued and was served by Sergeant Felbinger and other police officers, resulting in the seizure of various items of contraband and the arrest of the defendant.

The defendant was subsequent indicted on five counts of unlawful possession of a controlled substance, two counts of unlawful possession with intent to deliver a controlled substance, one count of unlawful possession of cannabis, one count of unlawful possession with intent to deliver cannabis and three counts of unlawful use of weapons. On May 31, 1973, defendant filed a motion to quash the search warrant and suppress evidence. After a full hearing, the trial court granted defendant's motion.

The State contends that Sergeant Felbinger's affidavit provided sufficient basis for a finding of probable cause; thus, the search warrant was properly issued, and the evidence obtained as the result of the issuance of the warrant should not have been suppressed. We disagree.

■■ It is well settled that an affidavit which is based on hearsay and which does not reflect the personal observations of the affiant, as is the situation with the affidavit in this case, provides a sufficient basis for a finding of probable cause as long as it meets the United States Supreme Court's two-pronged test of *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L.Ed.2d 723, 729, 84 S.Ct. 1509:

"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [things to be seized] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'"

In the case before us there is no question that the affidavit satisfies the first prong of the *Aguilar* test. However, there is a substantial ques-

tion as to whether this affidavit satisfies the second prong which, in essence, goes to whether the magistrate can determine that the informant is telling the truth.

Therefore, the question before us becomes one of whether there is "a substantial basis" for the magistrate to credit the hearsay. (*Jones v. United States* (1960), 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725; *United States v. Harris* (1971), 403 U.S. 573, 29 L.Ed.2d 723, 91 S.Ct. 2075.) In *Harris* the Supreme Court reiterated its statements in *Jones* that averments of previous reliability of an informant are not always necessary in determining whether there was a substantial basis for crediting the hearsay. The Court found that the *Harris* affidavit provided such substantial basis for crediting the hearsay, in that the informant's statements were made against his penal interest. The Court also enumerated other factors which, by themselves, do not always conclusively show credibility, but which can be taken into account by the magistrate in making his determination. The Court listed such factors as the affiant's own knowledge of the defendant's reputation and previous criminal activities (a factor which the Court stressed) and corroboration of the informant's story even by unknown sources.

In the case before us, the affidavit is devoid of any of the factors described in *Harris* which could lead the magistrate to conclude that there was a substantial basis for crediting the hearsay. There was no basis for the magistrate's determining that the informant was truthful. In addition to the affidavit making no reference to the informant's previous reliability, the informant's statements of his presence during the transaction were not of such character as to be statements against penal interest. Although the affidavit did recite that the informant was present, it did not sufficiently demonstrate the informant's complicity in the criminal activities. Additionally, the informant's statement was not corroborated either by the police or by other sources, and the affiant gave no information as to his own knowledge of the defendant's reputation and past criminal activities.

Certainly, *Harris* does not limit a magistrate to those factors enumerated in the opinion, when a magistrate is attempting to determine whether there is a substantial basis for crediting the hearsay. For example, more than ordinarily detailed description of the suspect's criminal activities may be another factor a magistrate can take into account. (See *United States v. Harris* (Harlan J., dissenting), *supra*; *United States v. Unger* (7th Cir. 1972), 469 F.2d 1283.) However, the instant affidavit does not disclose the alleged criminal activities in such detail as to permit a magistrate to rely on the specificity of the affidavit in assessing the informant's truthfulness. We agree with the States that the affidavit's

recital of 28,000 seconal tablets is specific information. However, there is no indication or information concerning the "underlying circumstances from which the officer concluded that the informant  *  *  *  was 'credible' or his information 'reliable.' " Thus, there was no way for the magistrate to know how the number of 28,000 was arrived at by the informant and no substantial basis for believing the informant did not make up this number. Compare *United States v. Unger, supra.*

Furthermore, specificity without more would not be enough to permit a magistrate to determine that the informant is credible and the information reliable. In both cases cited by the State, *United States v. Unger, supra,* and *People v. Cohn* (1973), 30 Cal.App.3d 738, 106 Cal. Rptr. 579, in which the courts considered specificity of the affidavit as a factor which indicated the truthfulness of the informant, the warrant also contained other indices of the informant's truthfulness.

In *Unger,* the affidavit, in addition to detailing the suspect's criminal activities in highly specific terms, recited that the police had independently corroborated the informant's story by direct, personal observation and recited that the informant did not come from the criminal milieu. In *Cohn,* the specificity of the affidavit was supplemented by a description of the informant's activities which subjected her to possible criminal penalties and civil liability.

■■■ In the instant case the only information in the affidavit which would tend to show that the informant, who was not an ordinary citizen, was credible was that he was named and his place of residence was given. We find this factor, standing alone, is not enough to form the substantial basis needed for the magistrate to determine that the informant was credible or his information reliable.

The State has also cited *People v. McNeil* (1972), 52 Ill.2d 409, 288 N.E.2d 464, in support of its contention. However, we find that *McNeil* is factually distinguishable. In *McNeil* the Illinois Supreme Court, in upholding the validity of the search warrant based on a hearsay affidavit which did not sufficiently recite the past reliability of the informant, based part of its decision on "the imperative necessity for quick action." In *McNeil* the information was obtained, the affidavit was drawn up, and the warrant was issued within hours of an alleged robbery. In our case, this process took several days. Clearly, the officers involved believed there was no imperative necessity for quick action.

■■ Therefore, the order of the trial court quashing the search warrant and suppressing the evidence seized is affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.