THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID L. SMITH, Defendant-Appellant.

Fourth District   No. 16804

Opinion filed November 6, 1981.—Rehearing denied December 16, 1981.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Hugh Finson, State's Attorney, of Monticello (Diane Roe, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
Anonymous telephone "tip."
Police respond and arrest.
Motion to suppress both arrest and evidence.
Motion denied.
We affirm.

## FACTS

On December 28, 1979, Bradley Chitwood (an employee of the city of Monticello) reported to the Monticello City Police that during the previous night someone had forced open an overhead door of a building at the Monticello city landfill and had stolen an electric air compressor belonging to the city.

Four days later, at approximately 10:06 p.m. on January 1, 1980, the Piatt County Sheriff's Department received a telephone tip from an anonymous male caller that "the subjects who stole the air compressor from the city storage shed at the dump were at Security Storage at this time with the compressor."

Officers of the Piatt County Sheriff's Department and of the Monticello City Police proceeded to Security Storage, a private enterprise engaged in the business of leasing space to individuals for the storage of personal property and located east of the city of Monticello. Upon their arrival, the officers observed the defendant and two other persons standing near the defendant's car. The car was backed up to the open door of a storage bay leased to one of the persons with the defendant. The trunk of the car was open. One of the officers, Deputy Wisher, identified himself and stated that he was looking for the air compressor that had been stolen from the city landfill. The defendant and his companions then moved in front of the open garage doors, blocking Wisher's view of the interior, and stated that the officers could not enter without a search warrant. Deputy Wisher stepped around the three and shined his flashlight through the open door. In the garage he observed a green air compressor matching the general description of the one stolen.

The officers seized the compressor, placed it in the trunk of a squad car, and transported it to the Piatt County jail. It was later identified as the one stolen.

The defendant and his companions were required to follow the officers to the Piatt County jail. At the jail, Deputy Wisher informed the three that they were at least going to be charged with being in possession of stolen property. Their *Miranda* rights were then read with Officer Ewers as a witness. Upon questioning, Smith first denied having stolen the compressor, claiming he had found it in a ditch near the landfill. He later confessed that he alone had burglarized the storage shed and that he had stolen the air compressor. The defendant absolved his companions of any knowledge of, or complicity in, his crime. Smith was then incarcerated in the Piatt County jail pending the setting of bail. His companions were released without being charged.

On January 2, 1980, a two-count information was filed in the Piatt County Circuit Court charging Smith with burglary and with theft (under $150). The same day, Smith was arraigned on these charges, a public defender was appointed, and Smith was released on a $2,000 recognizance bond.

Following a preliminary hearing, the defendant pleaded not guilty and was bound over for jury trial. He subsequently filed a motion to suppress on the ground that his arrest was illegal and the fruits of his illegal arrest were inadmissible into evidence. The motion was denied. A motion to reconsider the motion to suppress was allowed and, after briefing and argument, the trial judge again denied the motion to suppress, stating his reasons in an able eight-page memorandum order.

The defendant then waived his right to jury trial. At the bench trial—where all facts were stipulated—defendant renewed his motion to sup-

press. It was again denied. The defendant then was found guilty of burglary and theft (under $150). He was sentenced to one year probation with a condition of probation that he make restitution as determined by the court. The defendant now appeals his conviction.

## OPINION

In denying the defendant's motion to suppress, the trial judge held that "the totality of the circumstances at the time of the arrest were of such a nature that it would lead a reasonable and prudent man to believe that at the time of the arrest the persons [at Security Storage] were committing, or had committed a crime thereby giving the police probable cause to arrest pursuant to section 107—2(c) of the Criminal Code." The trial court's holding was premised upon a finding that the two-pronged test for probable cause set out by the Supreme Court in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, had been satisfied.

■■ It is a truism that a trial court's determination of probable cause · should not be disturbed on review unless it is manifestly erroneous. (*People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513; *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) The trial judge's decision to deny the motion to suppress was not manifestly erroneous.

The major precedents in this area—*Aguilar* and *Spinelli*—involve the standard under which a magistrate may issue a warrant, not the standard under which a police officer's determination of probable cause is tested. However, the Supreme Court in *Whiteley v. Warden* (1971), 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031, held that the test established in *Aguilar-Spinelli* was applicable to both arrest and search warrants. *Whiteley* further held that the standard was no less for reviewing a police officer's assessment of probable cause as a prelude to warrantless arrest.

■■ Under *Aguilar-Spinelli*, probable cause cannot be found upon a hearsay tip unless there is sufficient evidence to conclude that the informant's source of knowledge is reliable *and* that the informant is himself telling the truth. The two parts of this test have been labeled the "basis of knowledge prong" and the "veracity prong." The basis of knowledge prong may be satisfied if a tip includes such minute detail as to indicate that the information was gained in a reliable way. Veracity may be established either by a showing of past performance or that the information in the tip is independently corroborated.

The trial judge believed that the tip in the instant case was sufficiently detailed to establish the reliability of the informant's basis of knowledge and that it was sufficiently corroborated to demonstrate his veracity. The tip here certainly is more detailed than the one found

inadequate in *Spinelli*, where the only details supplied were two phone numbers. The informant here knew what had been stolen, where it had been stolen, where the stolen item was located, and where the thieves were. On the other hand, the tip here is not nearly so detailed as the one in *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (describing what the defendant looked like, what he would be wearing, where he would be, when he would be there, and how he would act), cited by *Spinelli* as a case involving a tip which was a "suitable benchmark" for the kind of detail required before it may be inferred that the information in a tip was acquired in a reliable way. 393 U.S. 410, 416-17, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584, 589.

Nor can the tip here be said to contain any more detail than the one in *People v. Gates* (1981), 85 Ill. 2d 376, 379, 423 N.E.2d 887, 888, wherein a search warrant was issued, based on the following anonymous letter:

> "This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida where she leaves it to be loaded up with drugs, then Lance flys [*sic*] down and drives it back. Sue flys [*sic*] back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.
>
> They brag about the fact they never have to work, and make their entire living on pushers.
>
> I guarantee [*sic*] if you watch them carefully you will make a big catch. They are friends with some big drugs dealers, who visit their house often.
>
> Lance & Sue Gates<br>Greenway<br>in Condominiums."

The supreme court found this not to be of "sufficient detail to lead a magistrate to conclude that the tip was the product of firsthand knowledge or personal observation" (85 Ill. 2d 376, 389, 423 N.E.2d 887, 893), and affirmed the trial court's order quashing the search warrant and suppressing evidence obtained thereby.

■■ While the trial judge's reasoning may have been erroneous in this case, it is the result below, not the reasoning, which will be considered by this court. (*People v. York* (1963), 29 Ill. 2d 68, 193 N.E.2d 773 (reversing the trial court's quashing of a search warrant and suppression of evidence).) Because we find that the tip in this case, plus the corroboration of the

information contained therein, is sufficient to satisfy both prongs of *Aguilar-Spinelli*, the result below was correct and we will not disturb it.

Specifically left open by *Gates* was "the question of whether partial corroboration, combined with an informant's tip, may cure a deficiency in either prong of the *Aguilar* test." (85 Ill. 2d 376, 390, 423 N.E.2d 887, 893.) It is clear from *Spinelli* that independent corroboration may be considered at least for some purposes in making a probable cause determination. *Spinelli* held that a magistrate must ask: "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar*'s tests without independent corroboration?" 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 588.

Thus, corroboration may ordinarily not serve as a means of satisfying the basis of knowledge prong of *Aguilar-Spinelli*. The evil to be protected against is the making of probable cause determination based on tavern talk. Unless the informant's basis of knowledge is revealed, a reviewing court ordinarily cannot make an informed determination of probable cause. The fact that one or two bits of such gossip are true will not serve to validate all other bits. This is the point of *Stanley v. State* (1974), 19 Md. App. 507, 313 A.2d 847, cited by the defendant.

● 4 However, even *Stanley* implicitly recognizes an exception to this general rule. That case held only that independent corroboration will not establish basis of knowledge "[t]o the extent to which the unverified portion remains an indispensable element * * *." (19 Md. App. 507, 531, 313 A.2d 847, 862.) Where all the information in a tip has been independently verified, independent corroboration may establish the basis of knowledge. There is no perilous reliance on "an amalgam of underworld rumor and barroom gossip" (19 Md. App. 507, 531, 313 A.2d 847, 862) if all facts have been verified. Nor is a magistrate or police officer abrogating his duty to make probable cause determinations by relying on an informant's possibly erroneous conclusions. With all of the information available to them, the magistrate or the police officer may draw his own conclusions.

*People v. Andreat* (1979), 76 Ill. App. 3d 948, 395 N.E.2d 728, supports this conclusion. There, the police were operating on a tip that Andreat and another had burglarized a pharmacy. The police, while investigating another incident, found Andreat and his co-defendant together with some of the pills stolen from the pharmacy in their possession. This was held to establish probable cause to arrest for the burglary.

■■ The facts of the case before us are similar. Acting on a tip indicating where the perpetrators of a recent burglary and their bounty could be found, the police went to investigate. The defendant was found at the specified location, standing in front of an open storage bay containing an

air compressor generally matching the description of the one stolen. It makes no difference that the arresting officer was not certain, when he arrested the defendant, that the air compressor he had seen *was* the one stolen. All that was required was a reasonable belief; that is, that the view of the compressor and the other information upon which the arresting officer acted be of the type of "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310.

■■■ Defendant's remaining arguments are similarly without merit. Defendant is simply incorrect that the seizure of the air compressor was a violation of his fourth amendment rights. The arresting officer in this case observed the compressor from the property of a private enterprise which was open to the public. He was in a place where he had a right to be. (*People v. Wright* (1968), 41 Ill. 2d 170, 242 N.E.2d 180, *cert. denied* (1969), 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993 (what an officer saw while peering through a window from a right-of-way owned by the Chicago Transit Authority was in plain view).) The discovery was also inadvertent. The officers were only conducting an investigation based on an informant's tip and were not certain what they would find. (Compare *People v. Pakula* (1980), 89 Ill. App. 3d 789, 411 N.E.2d 1385 (affirming the trial court's suppression of evidence alleged to have been in plain view where a police officer admitted that he had gone to the defendant's home to see marijuana that he knew was growing there).) It was also immediately apparent that the compressor was evidence of a crime. The officer did not have to be absolutely certain that what he saw was such evidence. (See *People v. Holt* (1974), 18 Ill. App. 3d 10, 309 N.E.2d 376 (plain view held to apply to an officer's view of a pair of trousers that he realized only upon closer inspection matched those worn by an attempted rapist); and *People v. Rogers* (1974), 18 Ill. App. 3d 940, 310 N.E.2d 854 (doctrine applied where officer saw something that resembled a shotgun protruding from under the seat of the defendant's automobile, but did not know for certain it was a gun until he pulled it out).) The fact that the officers used artificial light to peer into the garage does not affect the application of the plain-view doctrine. (*People v. Bombacino* (1972), 51 Ill. 2d 17, 280 N.E.2d 697, *cert. denied* (1972), 409 U.S. 912, 34 L. Ed. 2d 173, 93 S. Ct. 230.) The plain-view doctrine thus applies and the view of the compressor was properly used to establish probable cause to arrest the defendant. See generally *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

■■ Likewise, there is no validity to defendant's argument that under *Whiteley v. Warden* (1971), 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031, the corroboration here is insufficient to raise the anonymous tip to the

standard set forth in *Aguilar-Spinelli* because it only establishes innocent facts. It is true that *Whiteley* held that "the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or \* \* \* were in the process of committing the felony." (401 U.S. 560, 567, 28 L. Ed. 2d 306, 312-13, 91 S. Ct. 1031, 1036.) However, the facts of this case indicate just such corroboration. The arresting officer knew that a green air compressor had recently been stolen and he found the defendant with such a compressor. It was entirely reasonable for him to infer that the defendant was connected with the theft. It is clear from this analysis that the independent verification of the entire tip involved in this case made it as "trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration." 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 588.

In fact, the officers in this case would have been derelict in their duty if they had acted in any other manner. They clearly acted in a proper and commendable way.

Affirmed.

GREEN and LONDRIGAN, JJ., concur.