# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Woodrome*, 2013 IL App (4th) 130142

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY RAY WOODROME, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0142 |
| Filed | September 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in granting defendant's motion to suppress the evidence discovered by the police while investigating an anonymous tip that a person at a certain address was burning plastic-encased copper wire, since the officers involved were in a place where they had a right to be when they observed the evidence in plain view, after which they left the scene to obtain a warrant; therefore, no violation of the fourth amendment occurred. |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 11-CF-155; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Reversed and remanded for further proceedings. |

Counsel on
Appeal

Benjamin Goetten, State's Attorney, of Jerseyville (Patrick Delfino, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Ted E. Barylske, of Alton, for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Knecht and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1     In September 2011, the State charged defendant, Timothy Ray Woodrome, with single counts of theft and criminal damage to property. In March 2012, defendant filed a motion to suppress evidence, which the trial court granted.

¶ 2     On appeal, the State argues the trial court erred in granting defendant's motion to suppress evidence. We reverse and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4     In September 2011, the State charged defendant by information with one count of theft (720 ILCS 5/16-1(a)(1)(A) (West 2010)), alleging he knowingly exerted unauthorized control over property of AT&T, being copper wire having a total value in excess of $500, with the intent to permanently deprive AT&T of the use of the property. The State also charged defendant with one count of criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2010)), alleging he knowingly damaged property of AT&T, being telephone wire, with the damage being in excess of $300 but not in excess of $10,000. Defendant pleaded not guilty.

¶ 5     In March 2012, defendant filed a motion to suppress evidence. Defendant claimed the State intended to introduce into evidence items seized by police in the execution of a search warrant pertaining to his residence at 10783 Chestnut Lane in Godfrey. Defendant stated the affidavit and complaint for search warrant filed by Sheriff's Deputy Mark Marshall set forth three matters in support of the issuance of the warrant, including that (1) the police received information regarding an individual burning plastic-encased copper wire at defendant's residence and no identity as to the informant and his/her reliability was provided; (2) the police had knowledge of copper wire thefts within the same area in the previous three days; and (3) the affiant, Deputy Marshall, while on defendant's property earlier in the day in question observed a small burn pile containing plastic-encased copper wire and several sections of telephone cable on the floor of defendant's detached garage. Defendant claimed

Deputy Marshall did not have a warrant or defendant's consent to search when he made the observations prior to preparing his affidavit. Thus, the observations made by Deputy Marshall in his affidavit and complaint for search warrant were a product of his prior unlawful entry and insufficient for the issuance of a search warrant based upon probable cause.

¶ 6    In May 2012, the trial court conducted a hearing on the motion to suppress. Deputy Marshall testified to his affidavit and complaint for a search warrant, the search warrant, and the evidence/property report. He agreed the affidavit did not indicate the identification of the person who provided the information of an individual burning plastic-encased copper wire. He arrived at defendant's residence at 12:34 p.m. to investigate. From the roadway, he could see smoke from the fire approximately 100 feet from his position but could not see what was in the fire. Sergeant Tim Chappell arrived at the same time as Marshall. Defendant was out in the yard and quickly went inside after Chappell called his name. Marshall proceeded to the front door of the residence. Thereafter, "we went around the residence, knocking on the doors, trying to get somebody to come back to the door, makin[g] sure he wasn't climbing out the back window." During this check, Marshall observed telephone cable next to the residence. Chappell then advised Marshall to look in the burn pile. Upon approaching the fire, he could see copper wire therein. Marshall looked through an open door in the garage and observed telephone cables that matched the description of the plastic-encased copper wire. Marshall testified he later motioned an AT&T employee, who had been waiting down the street, to defendant's property to identify the wire. Marshall stated defendant never gave his consent to allow anyone to be on the property. Marshall used the information obtained from his observations to secure the search warrant.

¶ 7    On cross-examination, Deputy Marshall testified there had been several copper wire thefts in the vicinity during that particular time period. He stated he saw the fire while off of the premises. As he pulled into the driveway, he observed defendant turn away and go inside the residence. Marshall eventually left the scene to take defendant to jail at 12:59 p.m. and to secure the search warrant.

¶ 8    On redirect examination, Marshall stated he went to the front door of the residence but had not observed any copper wire. As he walked around the side of the house to make sure no one was attempting to exit, he observed copper wire. After he looked in the burn pile, he looked in the open door of the garage and observed copper wire in plain view.

¶ 9    Sergeant Tim Chappell testified he received a phone call from someone wishing to remain anonymous who was aware of copper wire having been stolen in the area and seeing the type of telephone cable that was stolen. Looking to investigate the copper wire thefts, Chappell arrived at defendant's residence at approximately 12:30 p.m. and observed him walk toward the residence. Knowing defendant from prior law-enforcement contacts, Chappell called out "Hey, Tim," but defendant entered the residence without acknowledging the statement. Chappell knocked on the front door but did not receive a response. He proceeded to the side of the house and knocked on another door. He observed telephone wire and asked Deputy Marshall to look in the burn pile, which was approximately 25 to 30 yards from the house. He later told Marshall to transport defendant and then secure a search warrant. Chappell called the AT&T employee, who had been servicing the area involved with

the stolen wire, and asked him to come to the property and look at the wire.

¶ 10        In December 2012, the trial court issued its written order and found, in part, as follows:

"Based upon the anonymous phone call, Deputies Marshall and Chappell traveled to defendant's property where smoke could be seen from a fire, which was approximately 100 feet from the roadway, but the material that was being burned could not be identified from that location. Officer Marshall stated that it was only when he was within 20 feet of the fire that he could tell it was plastic encased copper wire. Finally, the Sheriff's department deputies were aware that there had been reports of stolen plastic encased telephone wire in the area within three days prior to the arrest.

The question before this court is whether those three facts (anonymous call, smoke from a fire seen from the roadway and knowledge of plastic encased copper wire thefts in area) are sufficient for the officers to conduct a warrantless search of the defendant's property. Illinois law recognizes that probable cause can be based on an anonymous tip which is sufficiently detailed to establish the reliability of the informant's basis of knowledge and it was sufficiently corroborated to demonstrate his veracity. *People v. Gates*, 85 Ill. 2d 376, 423 N.E.2d 887 (1981). Under the facts of this case, the court does not believe that there was sufficient detail in the information provided by the informant to permit a warrantless search based solely on the information given.

This finding, however, does not end the discussion. Illinois courts have gone on to note that an insufficient informant's tip may be cured by independent partial corroboration by the officers investigating the allegations contained in the informant's tip. (*People v. Smith*, 101 Ill. App. 3d 772, 428 N.E.2d 641 (4th Dist. 1981). As noted in *People v. Smith* 'Where all the information in a tip has been independently verified, independent corroboration may establish the basis of knowledge. There is no perilous reliance on 'an amalgam of underworld rumor and barroom gossip (19 Md. App. 507, 531, 313 A.2d 847, 862), if all facts have been verified.'

In *People v. Smith*, the officers, 'Acting on a tip indicating where the perpetrators of a recent burglary and their bounty could be found, the police went to investigate. The defendant was found at the specified location, standing in front of an open storage bay containing an air compressor generally matching the description of the one stolen.' While these facts appear to be similar to the facts in the case before us, there is one significant difference; as noted by the Appellate Court in the *Smith* case, the arresting officer observed the compressor from the property of a private enterprise which was open to the public. In the words of the Appellate Court, 'he was in a place where he had a right to be.' (*People v. Smith*, at 428 N.E.2d 645) Under the facts of this case, while the officers in question observed smoke from the roadway, which was approximately 100 feet from the fire, they could not determine what was the source of the fire until they entered on the defendant's property and got within 20 feet of the fire.

As such, the officer's corroboration and therefore the establishment of probable cause occurred only after they entered upon his property without unlawful [*sic*] authority."

The court granted defendant's motion to suppress evidence.

¶ 11        In January 2013, the State filed a motion to reconsider, claiming exigent circumstances

-4-

existed to justify a warrantless entry. In February 2013, the trial court held a hearing and denied the motion. Thereafter, the State filed a certificate of impairment. See Ill. S. Ct. R. 604(a)(1) (eff. Feb. 6, 2013). This appeal followed.

¶ 12                                      II. ANALYSIS

¶ 13     The State argues the trial court erred in granting defendant's motion to suppress. The State contends the police officers had probable cause to enter upon defendant's property, their entry on the property was lawful based on exigent circumstances, and the evidence discovered on the property would have been inevitably discovered.

¶ 14                    A. Standard of Review and Burden of Proof

¶ 15     On review of a motion to suppress, this court is presented with mixed questions of law and fact. *People v. McQuown*, 407 Ill. App. 3d 1138, 1143, 943 N.E.2d 1242, 1246 (2011).

> "When reviewing a trial court's ruling on a motion to suppress, we will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; but we will review *de novo* the court's ultimate decision to grant or deny the motion." *People v. Close*, 238 Ill. 2d 497, 504, 939 N.E.2d 463, 467 (2010).

¶ 16     On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful. 725 ILCS 5/114-12(b) (West 2012); *People v. Barker*, 369 Ill. App. 3d 670, 673, 867 N.E.2d 1021, 1023 (2007). "The burden of producing evidence, or the burden of production, rests with the defendant." *People v. Mott*, 389 Ill. App. 3d 539, 542, 906 N.E.2d 159, 163 (2009). " 'However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion.' " *People v. Reatherford*, 345 Ill. App. 3d 327, 334, 802 N.E.2d 340, 347 (2003) (quoting *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000)).

¶ 17                              B. The Fourth Amendment

¶ 18     The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Our supreme court has interpreted the search-and-seizure clause of the Illinois Constitution in a manner consistent with the United States Supreme Court's fourth-amendment jurisprudence. See *People v. Caballes*, 221 Ill. 2d 282, 335-36, 851 N.E.2d 26, 57 (2006).

¶ 19     The general rule is that searches and seizures are unreasonable unless conducted pursuant to a judicial warrant issued by a neutral magistrate after a finding of probable cause. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). However, if there is no unreasonable government intrusion, "there is no search and seizure subject to the warrant clause of the [fourth] amendment." *People v. Neal*, 109 Ill. 2d 216, 221, 486 N.E.2d 898, 901 (1985).

¶ 20    In the case *sub judice*, the trial court granted defendant's motion to suppress, finding the information provided by the anonymous caller was not sufficiently detailed to permit a warrantless search and the corroboration of the call by the officers was invalid because they entered upon defendant's property without lawful authority. We disagree with the court's decision because the officers were conducting a lawful investigation and no violation of the fourth amendment occurred as no warrantless search took place.

¶ 21    Police may stop a person to investigate possible criminal behavior based on an informant's tip where the information received has some indicia of reliability and establishes the necessary quantum of suspicion. *People v. Lee*, 214 Ill. 2d 476, 487, 828 N.E.2d 237, 246 (2005). Where police obtain corroboration of the information, it establishes the informant's veracity and supports the inference that the informant obtained his information reliably. *People v. Williams*, 147 Ill. 2d 173, 210, 588 N.E.2d 983, 995 (1991).

¶ 22    We find the reliability of the anonymous caller is of little relevance in this case because no suspicionless stop or arrest was made and no warrantless search or seizure occurred based on the tip. See *People v. Scott*, 249 Ill. App. 3d 597, 602, 619 N.E.2d 809, 814 (1993) (finding the reliability of the tip was irrelevant in the fourth-amendment analysis where there was no initial stop of the defendant based on the tip). Here, an anonymous caller reported the theft of copper wire and that an individual was unlawfully burning plastic-encased copper wire at 10783 Chestnut Lane. Police officers were also aware of copper wire thefts in the vicinity. While these two facts alone would not have been sufficient to secure a search warrant, the officers were not prevented from conducting their investigation at the address in question. As they approached the subject property on a public road, the deputies saw defendant outside near a burn pile. While this observation would not have given officers the authority to arrest defendant or search the property, it did corroborate the caller's tip and allow for further investigation.

¶ 23    "An officer may lawfully approach the front door of a residence to conduct an investigation–referred to by many courts as a 'knock and talk'–so long as the officer enters an area impliedly open to the public." *People v. Redman*, 386 Ill. App. 3d 409, 418, 900 N.E.2d 1146, 1155 (2008); see also *Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1416 (2013) (stating "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do' " (quoting *Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1862 (2011))); *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) (stating that " '[a]bsent express orders from the person in possession,' an officer may 'walk up the steps and knock on the front door of any man's "castle," with the honest intent of asking questions of the occupant thereof' " (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964))). Moreover, "[a]n officer may go beyond the front door to investigate by approaching the back door of a residence–either when no one answers a knock on the front door or where a legitimate reason is shown for approaching the back door." *Redman*, 386 Ill. App. 3d at 418, 900 N.E.2d at 1156.

¶ 24    In this case, the officers left the roadway and turned into defendant's driveway. See *Scott*, 249 Ill. App. 3d at 603, 619 N.E.2d at 815 (stating "a driveway on private property, like the entrance to a private home, can be considered a public place"). Defendant started walking

away from the burn pile as he removed his gloves. As defendant walked toward the house, Sergeant Chappell exited his car and called out, "Hey, Tim." Defendant did not acknowledge Chappell and went inside. The officers then went to the front door and knocked. As this action was in furtherance of the investigation, it was a legitimate reason for approaching the front door. See *Taylor*, 458 F.3d at 1204 (finding no fourth-amendment violation where "the officer entered the property, proceeded down the driveway that provided access to the house, went to the front door and knocked on it in order to investigate the suspicious and troubling 911 calls"). Deputy Marshall also went around to the back of the residence to knock on doors and to make sure defendant "wasn't climbing out the back window." These were also legitimate reasons for approaching the rear of the house. See *Redman*, 386 Ill. App. 3d at 418, 900 N.E.2d at 1156.

¶ 25 "Once an officer is legitimately on the property, he or she may properly observe any 'evidence lying about in the open.' [Citation.] A search does not occur when officers observe what is in open view." *Redman*, 386 Ill. App. 3d at 419, 900 N.E.2d at 1156; see also *People v. Berg*, 67 Ill. 2d 65, 68, 364 N.E.2d 880, 881-82 (1977) ("it is not a search to observe that which is in open view"); *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003) (" '[W]hen the police come on to private property to conduct an investigation ... and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.' " (quoting 1 Wayne R. LaFave, Search and Seizure § 2.3(f), at 506-08 (3d ed. 1996))).

¶ 26 Here, the officers were aware of recent copper wire thefts in the area. Marshall stated he saw multiple sections of telephone cables next to the residence. When Chappell was on the side of the house to knock on the side door, he saw telephone wire. After being asked to do so, Marshall looked in the burn pile and saw burnt copper wire. At some point in time, he looked in the open door of the garage and saw copper wire in plain view.

¶ 27 The evidence indicates the officers' decision to enter the property and approach the house, as well as the manner in which they did so, constituted reasonable police actions in the midst of a criminal investigation. Proceeding around the house to knock on doors and/or to make sure defendant did not attempt to flee were also reasonable and proper actions. While the officers were in a place where they had a lawful right to be, they observed in plain view telephone cable that matched the description of the stolen copper wire. Officers did not have to look in any containers or open any doors to do so. *Cf. People v. Payton*, 317 Ill. App. 3d 909, 914, 741 N.E.2d 302, 306 (2000) (finding a fourth-amendment violation where an officer discovered cocaine and cannabis after lifting the lid of a barbecue grill located on the front porch). Moreover, no argument can be made based on the evidence presented that simply looking in the burn pile constituted an unreasonable government intrusion since the officers were lawfully on the property and had already observed suspected stolen copper wire. See *People v. Nielson*, 187 Ill. 2d 271, 283, 718 N.E.2d 131, 140 (1999) (finding a burn pile located outside a trailer's curtilage was "protected by neither the United States Constitution nor the Illinois Constitution against unreasonable searches and seizures"); see also *Oliver v. United States*, 466 U.S. 170, 181 (1984) (holding "an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by

government officers"). On a final note, the officers' request to have the AT&T employee come to defendant's property is of no consequence because the evidence indicated the employee did nothing more than identify the wire.

¶ 28    Here, no fourth-amendment violation occurred. The officers were in a place where they lawfully had a right to be and they observed evidence of a crime in plain view. Even then, the officers did not seize the evidence but secured a search warrant based on the information known to them. As the officers were not on the property unlawfully and they did not conduct a warrantless search, the trial court erred in granting defendant's motion to suppress.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 31    Reversed and remanded for further proceedings.