# Illinois Official Reports

## Appellate Court

---

### *People v. Brandt*, 2019 IL App (4th) 180219

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN R. BRANDT JR., Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-18-0219 |
| Filed | April 2, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 15-CF-49; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Benjamin L. Goetten, State's Attorney, of Jerseyville (Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Mettes and Jessica M. Hathaway, of Rosenblum, Schwartz, & Fry, P.C., of St. Louis, Missouri, for appellee. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Steigmann and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State charged defendant, John R. Brandt Jr., with unlawful possession with intent to deliver a controlled substance and unlawful possession with intent to deliver cannabis. Defendant filed a motion seeking to suppress evidence obtained from the execution of a search warrant on his home, arguing probable cause did not exist for the issuance of the warrant. After a hearing, the Jersey County circuit court granted defendant's motion. The State appeals, arguing the court's decision was in error. We reverse and remand for further proceedings.

¶ 2                          I. BACKGROUND
¶ 3                          A. Search Warrant
¶ 4    On April 2, 2015, Inspector Mike Ringhausen, an officer with the South Central Illinois Drug Task Force (Task Force), filed an affidavit and complaint seeking a warrant to search defendant's home and to seize any items related to the unlawful possession or production of cannabis. The affidavit and complaint relied, in part, on the fact an officer detected the odor of cannabis during a "knock and talk" at defendant's home. Judge Pistorius issued the requested search warrant, which was executed that same day.

¶ 5                          B. Information
¶ 6    On April 6, 2015, the State charged defendant by information with unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(B) (West 2014) (a substance containing cocaine)) and unlawful possession with intent to deliver cannabis (720 ILCS 550/5(d) (West 2014)).

¶ 7          C. Motion to Quash Search Warrant and to Suppress Evidence
¶ 8    In April 2016, defendant filed a "Motion to Quash Search Warrant and To Suppress Evidence." Defendant requested, citing section 114-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12 (West 2014) (allowing for a pretrial motion "to Suppress Evidence Illegally Seized")), the trial court to "quash the search warrant issued on April 2, 2015[,] and to suppress any and all evidence obtained from the execution of said search warrant." In support, defendant argued, in part, the alleged detection of the odor of cannabis outside his home should not have been considered when reviewing the complaint for a search warrant, as it was detected during an unlawful search of the curtilage of his home and, without that evidence, probable cause to support the search warrant was lacking.

¶ 9                          D. Suppression Hearing
¶ 10    Over a two-day period in August and November 2017, the trial court held a hearing on defendant's motion to quash the search warrant and suppress evidence. The court heard testimony from Inspector Ringhausen and Master Sergeant Karen Gordon, another officer with the Task Force, and was presented with several photographs of defendant's home and its surroundings. The following is gleaned from the evidence presented.

¶ 11 On March 4, 2015, Inspector Ringhausen received a phone call from an anonymous person who indicated defendant was in possession of drugs and selling them from his home. Inspector Ringhausen testified he previously received similar information.

¶ 12 On April 2, 2015, Inspector Ringhausen decided to conduct a "knock and talk" at defendant's home in hopes of obtaining defendant's consent to search the home. Inspector Ringhausen, Sergeant Gordon, and Special Agent Shawn King drove to defendant's home to conduct the "knock and talk." The three officers drove in separate vehicles.

¶ 13 Defendant's two-story home was located along a narrow gravel road in rural Jersey County. Sergeant Gordon described the road as a "single road, so if someone was coming at you in a different direction someone would have to get off to the side." Defendant's home was situated parallel to the road. A driveway in the front of the home ran perpendicular to the road. The side of the home facing the road had one window on the first floor, which was located more towards the rear of the home. The window was to the kitchen. The area between the side of the home and the road was covered with gravel similar to the gravel on the road. The space appeared to be slightly wider than the width of a vehicle.

¶ 14 Inspector Ringhausen testified all three officers arrived at defendant's residence at the same time. Inspector Ringhausen drove the lead vehicle, with Agent King and Sergeant Gordon following behind. At the time of their arrival, defendant and his daughter were outside the home and near the front driveway. Inspector Ringhausen parked his vehicle by the driveway. Sergeant Gordon testified Agent King parked his vehicle "either to the right or behind" Inspector Ringhausen's vehicle. Sergeant Gordon testified she "continued straight forward," drove around Inspector Ringhausen's vehicle, and then parked in the graveled area between the road and the side of the home. Sergeant Gordon testified she parked in that location because it had the "same type of gravel" as the road and she did not "want to park on the grass." Inspector Ringhausen described the location where Sergeant Gordon parked her vehicle as "inadvertent" and a "coincidence." After parking, the driver side of Sergeant Gordon's vehicle was within several feet of the kitchen window, which was open and had a fan blowing outwards.

¶ 15 Inspector Ringhausen exited his vehicle and spoke with defendant outside the home. Inspector Ringhausen recommended defendant send his daughter to her grandfather's home, which was nearby. Defendant did so. Inspector Ringhausen explained the reason why he and the other officers were present. Defendant informed Inspector Ringhausen he wanted to lock the front door of his home, as he had dogs inside and was concerned for the officers' safety. Inspector Ringhausen allowed defendant to do so. Inspector Ringhausen requested defendant's driver's license, which defendant provided.

¶ 16 Sergeant Gordon testified she detected "[t]he smell of fresh cannabis" upon exiting her vehicle. Inspector Ringhausen testified Sergeant Gordon walked up during his conversation with defendant and asked defendant, " '[W]hy would there be an odor of cannabis coming from within the residence?' " Sergeant Gordon testified she advised Inspector Ringhausen she detected the odor of fresh cannabis coming from the home.

¶ 17 Inspector Ringhausen requested defendant's consent to search the home. Defendant declined to give his consent and then left.

¶ 18 Officers secured the property, and Inspector Ringhausen left to apply for a warrant to search the home. Inspector Ringhausen secured a search warrant. The execution of that warrant resulted, in part, in the discovery of a sandwich bag containing approximately nine

grams of cannabis in a cabinet above the kitchen window. Inspector Ringhausen and Sergeant Gordon did not recall whether the cannabis was sealed in the sandwich bag.

¶ 19                                        E. Written Posthearing Argument

¶ 20        Defendant filed a written posthearing argument in support of his motion to quash the search warrant and suppress evidence. Defendant maintained, in part, the alleged detection of the odor of cannabis outside his home should not have been considered when reviewing the complaint for a search warrant, as it was detected during an unlawful search of the curtilage of his home and, without that evidence, probable cause to support the search warrant was lacking. Defendant specifically asserted an unlawful search occurred when Sergeant Gordon made a "deliberate and calculated effort to surveil the interior of the residence and to obtain information about the contents of the residence under the guise of an innocent 'knock and talk' encounter." In support of this assertion, defendant noted as follows: (1) "[t]here was no reason for the officers to approach the residence itself as the intended target of the 'knock and talk' encounter was not in the residence at the time the officers arrived," (2) "[t]here was no need to park next to the window of the residence as there was plenty of space to park away from the residence," and (3) "[Sergeant] Gordon stepped off the public thoroughfare and entered into the area immediately adjacent to the residence with neither consent nor warrant with the intent to gather evidence."

¶ 21        In response to this argument, the State asserted, in part, no evidence or testimony suggested Sergeant Gordon's approach to the residence was anything other than coincidental. In fact, the State noted Sergeant Gordon thoroughly explained her reasoning for parking next to defendant's home, which the State suggested was reasonable under the circumstances. The State contended the officers arrived at defendant's home for the lawful purpose of conducting a "knock and talk" and entered only on to those portions of the property that appeared open to the public. The State analogized the area where Sergeant Gordon parked her vehicle with a driveway, noting its location to the road, the similarity of the gravel to the road, and the absence of any distinguishing characteristics between that area and the road.

¶ 22        In reply, defendant argued the area directly outside his kitchen window was "private property, not accessible to the public" and the officers had no valid reason to be in that area when he was a distance from the home and other parking spots were available. Defendant maintained Sergeant Gordon "intentionally parked near the window in order to intrude into [his] constitutionally-protected space." Defendant also suggested the situation presented was similar to the situations presented in *Florida v. Jardines*, 569 U.S. 1 (2013), and *People v. Burns*, 2016 IL 118973, 50 N.E.3d 610, as "the presence of multiple officers standing directly outside of a kitchen window" was beyond what a private citizen might expect from a consensual encounter.

¶ 23                                             F. Written Order

¶ 24        On February 12, 2018, the trial court entered a written order granting defendant's motion to quash the search warrant and suppress evidence. In relevant part, the court ruled as follows:

> "[V]alidity and parameters of the ['knock and talk['] were outlined by the Appellate Court for the Fourth District. Essentially, officers are permitted to walk to a front door, as are neighbors, solicitors[,] and peddlers without a warrant, knock and speak

to the occupants. Further, *** the officer may go beyond the front door and go to the back door if no one answers or there is otherwise a legitimate reason for doing so.

The reason for this narrow view of the [']knock and talk['] is that not only is an individual's home protected by the [f]ourth [a]mendment, but under Illinois law, '[t]he curtilage, that is, the land immediately surrounding and associated with the home, has been considered part of the home itself for fourth amendment purposes.' *People v. McNeal*[,] 175 Ill.[ ]2d 335,[ ]344[, 677 N.E.2d 841, 846] (1997). Thus, '[t]he government cannot search a home and its curtilage absent a warrant or some exception to the warrant requirement.' *People v. Pitman*, 211 Ill. 2d 502, 518[, 813 N.E.2d 93, 104] (2004); see also *People v. Accardi*, 284 Ill. App. 3d 31, 34[, 671 N.E.2d 373, 375] (1996).

In this case, the officers arrived believing that the defendant possessed and was selling illegal drugs and their intent was to conduct a [']knock and talk.['] However, when they arrived the defendant was outside his home. With photographs presented into evidence showing multiple places to park, [Sergeant] Gordon 'inadvertently' parked the driver's side of her vehicle next to an open window with a fan blowing out. In this court's view, this constitutes an intrusion into the curtilage of defendant's home. Placing a trained drug task force officer near an open window of a home when the possession and sale of cannabis is suspected is, in this court's view, akin to bringing a drug dog on a person's front porch[ ] ([*Jardines*, 569 U.S. 1]) or on a third floor landing outside [a] defendant's apartment door within a locked apartment building[ ] ([*Burns*, 2016 IL 118973]).

As such, this court finds that the intrusion into the curtilage of the defendant's home, namely the open window, under these circumstances was unlawful and cannot be used to support the [s]earch [w]arrant. The court further finds that without this evidence the facts remaining are insufficient to support a search. Therefore, said [s]earch [w]arrant is quashed and the evidence gained therefrom is hereby suppressed."

¶ 25                                  G. Motion to Reconsider

¶ 26    On February 26, 2018, the State filed a motion to reconsider the trial court's order granting defendant's motion to quash the search warrant and suppress evidence. The State argued "existing case law justified [the] officers' presence on the property as well as the[ir] location on the property to conduct a 'knock and talk.' "

¶ 27                            H. Ruling on Motion to Reconsider

¶ 28    Following a March 2018 hearing, the trial court denied the State's motion to reconsider. In the oral pronouncement of its decision, the court stated, in part, as follows:

"In the [m]otion the State argues that the court failed to consider that the existing case law justifies the officer's presence on the property, as well as, the location on the property [to] conduct[ ] [a 'knock and talk']. The court understands the State's argument and believes, yes they have a right to be present, but I think the case authority that the court has read and is familiar with now, suggests that they had a right to be on the property. They had a right to proceed to the front door as a

salesman, a mailman, a neighbor would do and in this set of particular facts they took a more circuitous route that just happened to take them by an open window with a fan and I felt that that. that route, when looking at the case authority involved, was inappropriate and improper and therefore ruled in the manner that it did. So therefore, while the court understands and appreciates the State's argument in this regard[,] [t]he court's [going to] deny the [m]otion to [r]econsider. Thank you."

¶ 29    This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31    At issue is the correctness of the trial court's order granting defendant's motion to suppress. The court granted defendant's motion based on its determination Sergeant Gordon detected the odor of cannabis during an unlawful intrusion into the curtilage of defendant's home and, without that evidence, probable cause to support the search warrant was lacking. The State asserts this determination was in error, as the evidence showed Sergeant Gordon parked at defendant's home for the lawful purpose of conducting a "knock and talk" and then plainly detected the odor of cannabis upon exiting her vehicle, which she parked in the most appropriate place under the totality of the circumstances. Defendant disagrees, contending Sergeant Gordon's decision to park her vehicle in a nonpublic area next to an open window with a fan blowing out when he was standing in his front yard was an improper intrusion into the curtilage of his home.

¶ 32    When reviewing a ruling on a motion to suppress evidence, we are presented with mixed questions of fact and law. *People v. Manzo*, 2018 IL 122761, ¶ 25. We will give deference to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *Id.* Where the factual findings are accepted, we will conduct a *de novo* review of whether suppression is warranted under those facts. *Id.*

¶ 33    The fourth amendment to the United States Constitution, made applicable to state officials through the fourteenth amendment to the United States Constitution, guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and subject to few exceptions, it requires officers to obtain a warrant before searching a home. U.S. Const., amend. IV; *Kyllo v. United States*, 533 U.S. 27, 31 (2001). This protection extends to the home's curtilage—the area "immediately surrounding and associated with the home." *Oliver v. United States*, 466 U.S. 170, 180 (1984). Relevant to this appeal, a "search" occurs "when the government engages in an unlicensed physical intrusion of a constitutionally protected area in order to obtain information." *United States v. Gutierrez*, 760 F.3d 750, 753-54 (7th Cir. 2014) (citing *Jardines*, 569 U.S. at 5-6).

¶ 34    The Supreme Court has recognized a police officer may lawfully "approach a home and knock" without a warrant. *Jardines*, 569 U.S. at 8. The Court found such an intrusion to be lawful given the implicit license any private citizen has to do the same. *Id.* This procedure has been referred to as a "knock and talk." See *Carroll v. Carman*, 574 U.S. ___, ___, 135 S. Ct. 348, 350-52 (2014); *People v. Kofron*, 2014 IL App (5th) 130335, ¶ 24, 16 N.E.3d 371; *People v. Woodrome*, 2013 IL App (4th) 130142, ¶ 23, 996 N.E.2d 1143; *People v. Redman*, 386 Ill. App. 3d 409, 418, 900 N.E.2d 1146, 1155 (2008). "The purpose of a 'knock and talk' is not to create a show of force, nor to make demands on occupants, nor to raid a residence. Instead, the purpose *** is to make investigatory inquiry or, if officers reasonably suspect

criminal activity, to gain the occupants' consent to search." *United States v. Gomez-Moreno*, 479 F.3d 350, 355 (5th Cir. 2007), *overruled on other grounds by Kentucky v. King*, 563 U.S. 452 (2011). A "knock and talk," when performed within its proper scope, is not a search for fourth amendment purposes.

¶ 35    The Supreme Court has stated complying with the terms of the traditional invitation to approach a home and knock "does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Jardines*, 569 U.S. at 8. When reviewing a police officer's actions during a "knock and talk," our courts have focused the reasonableness of the officer's actions given the totality of the circumstances presented. See *Woodrome*, 2013 IL App (4th) 130142, ¶¶ 23-28; *Redman*, 386 Ill. App. 3d at 418-20; *Kofron*, 2014 IL App (5th) 130335, ¶¶ 24-27. We have specifically considered whether the manner in which an officer approached a home to conduct a "knock and talk" constituted "reasonable police actions." *Woodrome*, 2013 IL App (4th) 130142, ¶ 27.

¶ 36    In this case, the trial court found the officers approached defendant's home for the lawful purpose of conducting a consensual "knock and talk." The court concluded, however, the manner in which Sergeant Gordon approached the home effectively transformed the lawful "knock and talk" into an unlawful search. The trial court reached this conclusion based on the following: (1) "when [the officers] arrived[,] the defendant was outside his home"; (2) "[w]ith photographs presented into evidence showing multiple places to park, [Sergeant] Gordon 'inadvertently' parked the driver's side of her vehicle next to an open window with a fan blowing out"; (3) "[p]lacing a trained drug task force officer near an open window of a home when the possession and sale of cannabis is suspected is, in this court's view, akin to bringing a drug dog on a person's front porch[ ] ([*Jardines*, 569 U.S. 1]) or on a third floor landing outside [a] defendant's apartment door within a locked apartment building[ ] ([*Burns*, 2016 IL 118973])"; and (4) "[Sergeant Gordon] took a more circuitous route that just happened to take [her] by an open window with a fan."

¶ 37    Initially, we outright reject the trial court's suggestion that placing a trained drug task force officer near an open window of a home when the possession and sale of cannabis is suspected is "akin" to bringing a drug dog on a person's front porch or on a third-floor landing outside an apartment door within a locked apartment building. As the State argues, a police officer is not a special instrument designed to sense what a human being cannot, like a narcotics K-9. See *Jardines*, 569 U.S. at 9 ("To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to—well, call the police.").

¶ 38    Turning to the officers' actions, the evidence showed defendant was outside his home and near the driveway when the officers arrived in their vehicles. At that point, the officers no longer had a reasonable basis to approach defendant's home to conduct a "knock." The officers could, however, approach defendant to conduct a "talk." In order to do so, the officers needed to park and exit their vehicles.

¶ 39    After Inspector Ringhausen parked his vehicle by the driveway and Agent King parked his vehicle "either to the right or behind" Inspector Ringhausen's vehicle, Sergeant Gordon "continued straight forward," drove around Inspector Ringhausen's vehicle, and then parked in the graveled area between the road and the side of the home. Sergeant Gordon testified she

parked in that area because it had the "same type of gravel" as the road and she did not "want to park on the grass." Inspector Ringhausen described the area where Sergeant Gordon parked her vehicle as "inadvertent" and a "coincidence." The area is immediately adjacent to the "single road" and is covered with gravel similar to the gravel on the road. There are no distinguishing features between the area where Sergeant Gordon parked her vehicle and the road. As the State argued before the trial court, the area appears for all intents and purposes to be a driveway—a location where any visitor could reasonably be expected to park. The fact that there may have been other locations to park does not negate the reasonableness of Sergeant Gordon's actions. Sergeant Gordon was in a place where she had a lawful right to be.

¶ 40  Upon exiting her vehicle, Sergeant Gordon detected the odor of "fresh cannabis." When an officer enters into the curtilage of a home for the lawful purpose of conducting a "knock and talk" and his or her movements are restricted to places visitors could be expect to go, a search does not occur when that officer observes what is in plain view or detects what is in plain smell. *Redman*, 386 Ill. App. 3d at 419; see also *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003) ("[W]hen the police come on to private property to conduct an investigation *** and restrict their movements to places visitors could be expected to go ([*e.g.*], walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." (Internal quotation marks omitted.)). Because Sergeant Gordon plainly detected the odor of cannabis in a place where she had a lawful right to be, no fourth amendment violation occurred. The trial court erred in excluding this evidence when considering whether the search warrant was supported by probable cause.

¶ 41  As a final matter, defendant suggests, as he did before the trial court, the amount and location of the cannabis discovered casts doubt on the veracity of Sergeant Gordon's testimony indicating she could detect the odor of cannabis. The trial court addressed this argument, finding:

> "Much time has been spent by counsel for this defendant *** arguing the impossibility of the officers detecting the odor of cannabis when such a small amount was found in the kitchen near the open window. This court found the testimony of the officers to be based upon significant experience in the area of identifying cannabis and credible in their presentation to the court."

Defendant fails to point to any evidence to suggest the court's finding is against the manifest weight of the evidence. We decline to disturb the court's credibility determination.

¶ 42                                    III. CONCLUSION
¶ 43  We reverse and remand for further proceedings.


¶ 44  Reversed and remanded.

- 8 -